UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LAQUANN REED,                          :
                                       :      Civil Action No. 12-3920 (NLH)
            Plaintiff,                 :
                                       :
        v.                             :      **OPINION**
                                       :
VINCENT TRASATTI,                      :
                                       :
            Defendant.                 :

**APPEARANCES:**

**LAQUANN REED,** Plaintiff pro se
262887
CCCF
330 FEDERAL STREET
CAMDEN, NJ 08101

**HILLMAN**, District Judge

    Plaintiff Laquann Reed ("Plaintiff") seeks to bring this action *in forma pauperis*. Based on his affidavit of indigence, the Court will grant Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the complaint.

    At this time, the Court must review the complaint, pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the complaint should be dismissed at this time.

1

**I. BACKGROUND**

Plaintiff brings this civil rights action, pursuant to 42 U.S.C. § 1983, against Defendant Vincent Trasatti. The following factual allegations are taken from the complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

Plaintiff alleges that during his regularly scheduled recreation period on June 1, 2012 at Camden County Correctional Facility, Defendant Vincent Trasatti "basically" denied him his right to make a legal phone call by not notifying the center control area to "electronically cut on the phones." As a result, Plaintiff alleges that there was a verbal exchange which led to a physical altercation between Plaintiff, Defendant and several officers. Plaintiff states that as a result, he had bruising on his upper body, for which he requested medical treatment, but was denied.

Plaintiff requests that the defendant be held accountable for his actions and that the "defendant be recompensated for pain and suffering caused by the actions of the said defendant."

**II. DISCUSSION**

**A. Legal Standard**

**1. Standards for a *Sua Sponte* Dismissal**

The Prison Litigation Reform Act, Pub.L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §

1915(e)(2)(B). This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because Plaintiff is proceeding as an indigent and is a prisoner.

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). Citing its opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must allege "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)(citing *Iqbal*).

The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. *See Iqbal*, 556 U.S. 677-679. *See also Twombly*, 505 U.S. at 555, & n. 3; *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011); *Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2012). "A complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008)).

2. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his

constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

**B.   Analysis**

**1.   Denial of Legal Phone Call**

Plaintiff alleges that Defendant Trasatti denied him the right to make a legal phone call during his appointed recreation time.

The right of access to the courts derives from the First Amendment right to petition and the due process clauses of the Fifth and Fourteenth Amendments. The right of access to the courts requires that "adequate, effective, and meaningful" access be provided to inmates wishing to challenge their criminal charge, conviction, or conditions of confinement. *See Bounds v. Smith*, 430 U.S. 817, 822 (1977). Prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts." *Id.* at 825.

However, as the Supreme Court explained:

> ... *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996).

Moreover, a prisoner alleging a violation of the right of access must show that prison officials caused previous or imminent "actual injury" by hindering efforts to pursue such a claim or defense. *See Lewis*, 518 U.S. at 348–51, 354–55; *Oliver v. Fauver*, 118 F.3d 175, 177–78 (3d Cir.1997). As the Supreme Court directed:

> [The inmate] might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint.

*Lewis*, 518 U.S. at 351.

Here, Plaintiff fails to allege any actual injury due to the alleged denial of access to the courts. He does not allege that he was unable to file this or any other complaint in the courts, or that any court cases were dismissed because he did not have timely access to the courts. He has not provided any facts as to how Defendant's actions have affected his ability to pursue any legal claims. Thus, the allegations in the complaint are too conclusory to show a denial of court access sufficient to rise to the level of a constitutional deprivation under the *Iqbal* pleading standard.

Furthermore, Plaintiff's claims regarding the inability to make a legal telephone call are also without merit, as pled. Inmates' ability to communicate with their lawyers is protected by

their constitutional right of access to the courts and may implicate the Sixth Amendment right to assistance of counsel in criminal proceedings. *See Aswegan v. Henry*, 981 F.2d 313 (8th Cir.1992) (analyzing telephone use as access-to-courts issue).

However, it is established that a prisoner "has no right to unlimited telephone use." *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (quoting *Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir. 1989)). Rather, an inmate's telephone access is "subject to rational limitations in the face of legitimate security interests of the penal institution." *Id.* (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)). Correspondingly, an inmate's right to communicate even with his/her legal counsel is not unlimited. *See Ingalls v. Florio*, 968 F.Supp. 193, 203–04 (D.N.J. 1997) ("[L]imited access to telephone calls ... is not a constitutional violation so long as inmates can communicate with their counsel in writing or in person by visits."); *Aswegan*, 981 F.2d at 314 (upholding a state penitentiary's policy of prohibiting prisoners from making toll-free telephone calls, even to their attorneys, because the prisoners had alternative methods of exercising the right to access the courts, and had not alleged any irreparable harm or prejudice from the policy). Hence, if an inmate has an alternative method to communicate freely and privately with his counsel, it is less likely that the restrictions on telephone use will rise to the level of a constitutional violation. *See Ingalls*, 968 F.Supp. at 203-4; *Asweqan*, 981 F.2d at 314.

> In sum:
>
> three questions relevant to issue of telephone access to counsel and the courts are (1) whether [the prisoner] has alleged facts giving rise to an inference that no legitimate penological interest was served by the ... Defendants' actions, (2) whether he has sufficiently alleged that the ... Defendants' actions caused him an 'actual injury,' and (3) whether he had alternative avenues through which he could communicate with his attorneys and the courts.

*Aruanno v. Main*, 2010 WL 251590 at *10 (D.N.J. Jan. 15, 2010).

Here, Plaintiff has failed to allege any injury he suffered as a result of his inability to call his attorney. Nor does Plaintiff allege that he was prevented from communicating with the attorney via alternative avenues such as in writing and in-person visits. Based on the foregoing, Plaintiff's denial of legal access and legal telephone call claims will be dismissed without prejudice.

**2. Excessive Force**

It appears that Plaintiff is alleging a claim of excessive force against Defendant Trasatti. The test for whether a claim of excessive force is constitutionally actionable under the Eighth Amendment is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Giles v. Kearney*, 571 F.3d 318, 326–27 (3d Cir. 2009) (quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)) (internal quotations omitted). In conducting this inquiry, courts consider: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *See id.* (citing *Whitley*, 475 U.S. at 319).

In this case, Plaintiff has not pled enough facts to satisfy *Iqbal*'s requirements. He generally alleges that Defendant and "other officers" assaulted him in his cell. However, it is unclear exactly what role the only named Defendant, Mr. Trasatti, played in the altercation. As

such, this Court will dismiss his claim without prejudice and allow Plaintiff to file an amended complaint.

**3. Medical Claim**

It appears that Plaintiff is alleging that he was denied medical treatment for injuries sustained during the altercation.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976); *Rouse v. Plantier*, 182 F.3d 192 (3d Cir. 1999). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *See Estelle*, 429 U.S. at 106; *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003) (internal quotations and citations omitted); *see also*

*Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. *See Natale*, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *See Andrews v. Camden County*, 95 F.Supp.2d 217, 228 (D.N.J.2000).

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. *See Rouse*, 182 F.3d at 197. The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment. *See Atkinson*, 316 F.3d at 266. *See also Monmouth County Correctional Institutional Inmates*, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.' "); *Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir.1993); *White v. Napoleon*, 897 F.2d 103 (3d Cir. 1990).

Here, Plaintiff's vague allegations of "bruising" do not pass *Iqbal's sua sponte* screening plausibility requirement, because he has not pled a "serious medical need."  However, even assuming Plaintiff's pain is a serious medical need, Plaintiff has not sufficiently pled deliberate indifference.  Plaintiff only vaguely references a request for medical attention but does not state when he made his request or to whom he made this request.  Because it is possible that Plaintiff could provide additional facts to support a claim as to his medical issues, however, this Court will dismiss this denial of medical care claims, without prejudice, for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A (b)(1).

**IV. CONCLUSION**

For the reasons set forth above, the Complaint will be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A (b)(1).  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, the Court will grant Plaintiff leave to move to re-open this case and to file an amended complaint.[1]  An appropriate order follows.

Dated: January 24, 2013

At Camden.

       s/ Noel L. Hillman
       NOEL L. HILLMAN
       United States District Judge

---

[1] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed.1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  *Id.*  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  *Id.*